# UNITED STATES COURT OF APPEALS
## for the
# THIRD CIRCUIT

| | |
|---|---|
| PAULA JENSEN,<br><br>Appellant,<br><br>v.<br><br>PRESSLER & PRESSLER, LLP, ET AL.<br><br>Appellee. | **Appellate Docket Number**<br>14-2808<br><br>**U.S. District Court Docket Number**<br>2:13-cv-01712<br><br>**Nature of Proceeding**<br>(Fair Debt Collection Practices Act) |

### REPLY BRIEF BY APPELLANT PAULA JENSEN

Sergei Lemberg
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, Connecticut 06905
(203) 653-2250

*Attorneys for Appellant*
*Paula Jensen*

December 22, 2014

# TABLE OF CONTENTS

TABLE OF CITATIONS ....................................................................................iii

ARGUMENT .......................................................................................................1

I.    JENSEN IS ENTITLED TO JUDGMENT: THE DISTRICT

      COURT ERRONEOUSLY READ 'MATERIALITY' INTO

      THE FDCPA ...............................................................................................1

      A.    Jensen Is Entitled to Judgment under the Least

            Sophisticated Consumer Standard .................................................1

      B.    Midland and Pressler Fail to Justify the Insertion of

            Materiality into the FDCPA .........................................................2

      C.    Public Policy Militates Toward Expanding Consumer

            Protections ...................................................................................8

      D.    Jensen's Answer to the Subpoena Has No Bearing on

            Liability .......................................................................................10

      E.    Materiality Is for the Jury............................................................12

II.   IN ANY EVENT, THE SUBPOENA WAS MATERIALLY

      MISLEADING BECAUSE IT WAS IMPROPERLY ISSUED.......................13

      A.    Defective Summons Cases Have No Bearing on This Case....................16

      B.    The Subpoena Is Capable of Two Interpretations, One of

            Which Is False ..............................................................................18

CONCLUSION ....................................................................................................20

i

COMBINED CERTIFICATIONS.....................................................................................22

# TABLE OF CITATIONS

**Cases**

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) ........................................................19

*Bock v. Pressler and Pressler, LLP*, --- F. Supp. 2d ----, 2014 WL 2937929 (D.N.J. June

    30, 2014).......................................................................................... 10, 20

*Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006) ...........................................1

*Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294 (3d Cir. 2008) .........19

*Carter v. United States*, 530 U.S. 255, 120 S. Ct. 2159 (2000) .................................4

*Cavallaro v. Jamco Prop. Mgmt.*, 760 A.2d 353 (N.J. Super. Ct. App. Div. 2000) ..............14

*Clomon v. Jackson,* 988 F.2d 1314 (2d Cir. 1993) ....................................................1

*Crescenzo v. Crane*, 796 A.2d 283 (N.J. Super. Ct. App. Div. 2002)........................... 14, 15

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ....................................8

*Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992)....................................................7

*Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009) .................................. 2, 5

*Hirsch v. DePuy*, 11 N.J. Misc. 500 (1933) .................................................... 16, 17

*In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004).............................................12

*Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448 (6th Cir. 2008) ...........................6

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) ..................................10

*Jung v. Nationwide Mut. Fire Inc. Co.*, 949 F.Supp. 353 (E.D. Pa. 1997)............................12

*Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011) .......................19

*McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657 (3d Cir. 1980)..............................................14

*McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270 (3d Cir. 1989) ..............................14

*Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ill. 2009) ..............................10

*Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827 (1999)................................................ 3, 4

*Oberther v. Midland Credit Management, Inc*, --- F. Supp. 3d ----, 2014 WL 4548871 (D. Mass. Sept. 15, 2014)................................................................10

*Packard v. Provident Nat. Bank*, 994 F.2d 1039 (3d Cir. 1993) ....................................... 13, 14

*Pollard v. Law Office of Mandy L. Spaulding*, 2014 WL 4402213 (1st Cir. Sept. 8, 2014) ..10

*Rosenau v Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008) ........................................................18

*Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir. 1992) ..............................................12

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S. Ct. 2126 (1976)..............................12

*U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428 (6th Cir. 2005) ................................................................ 6, 7

*United States ex. rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. 2003) ................................................................ 6, 12

*United States v. Abuagla*, 336 F.3d 277 (4th Cir. 2003) ..........................................................5

*United States v. Alferahin*, 433 F.3d 1148 (9th Cir. 2006) ......................................................5

*United States v. Avelino*, 967 F.2d 815 (2d Cir. 1992) ..........................................................5

*United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008) ......................................................7

*United States v. Southland Mgmt. Corp.*, 288 F.3d 665 (5th Cir. 2002) ..................................6

*United States v. Southland Mgmt. Corp.*, 307 F.3d 352 (5th Cir. 2002) ..................................6

*United States v. Wells*, 519 U.S. 482, 117 S. Ct. 921 (1997) ..................................................3

*Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007) ................................11

*Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009) ......................................11

*Wood v. Fithian*, 24 N.J.L. 838 (E&A 1855) ............................................................16, 17, 18

**Statutes**

15 U.S.C. § 1692e ....................................................................................................................1

15 U.S.C. § 1692e(10) .............................................................................................................1

15 U.S.C. § 1692e(9) ...............................................................................................................1

18 U.S.C. § 287 ........................................................................................................................7

31 U.S.C. § 3729 ......................................................................................................................6

**Rules**

N.J. Ct. R. 1:9-1 ................................................................................................................ 13, 17

**Other**

Consumer Financial Protection Bureau, *Consumer Response Annual Report: January 1 –*

   *December 31, 2013* at p. 6 (2014),

   http://files.consumerfinance.gov/f/201403_cfpb_consumer-response-annual-

   report-complaints.pdf. ....................................................................................................9

FTC, Consumer Sentinel Network Data Book for January-December 2013 at App. B2

   (Feb. 2014), *available at* http://www.ftc.gov/reports/consumer-sentinel-network-

   data-book-january-december-2013 ..................................................................................9

Patrick Lunsford, *After Slight Rise in July, FDCPA Lawsuits Still Down Overall for 2014;*

*TCPA Claims Increase*, insideARM.com (Aug. 22, 2014),

http://www.insidearm.com/daily/debt-buying-topics/debt-buying/after-slight-rise-

in-july-fdcpa-lawsuits-still-down-overall-for-2014-tcpa-claims-increase/. ...................8

## ARGUMENT

**I.    JENSEN IS ENTITLED TO JUDGMENT: THE DISTRICT COURT ERRONEOUSLY READ 'MATERIALITY' INTO THE FDCPA**

### A. Jensen Is Entitled to Judgment under the Least Sophisticated Consumer Standard

Neither Midland nor Pressler addresses Jensen's main argument head on – that the subpoena sent to Jensen violates the plain language of the FDCPA, 15 U.S.C. §§ 1692e, e(9) and e(10), under the least sophisticated consumer standard this Court employs for FDCPA claims. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). Analyzing a debt collector's communications under this standard comports with "basic consumer-protection principles." *Id.* This Court uses the standard because "[t]he basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993)).

Under this time-proven standard, the answer is clear – any least-sophisticated consumer receiving the signed court subpoena from Pressler would inevitably believe that the subpoena bearing Terrence D. Lee's name was legitimate, approved by Mr. Lee and properly issued. In fact, however, the subpoena was counterfeit because Mr. Lee was not, and had never been, the Court's Clerk and did not authorize the subpoena in any way, shape or form. Thus, Pressler and Midland violated 15 U.S.C. §§ 1692e and e(10) by making a false representation and 1692e(9) by making a false representation that the document was approved by a court official.

1

But Appellees won below under a higher, fraud-like standard, one requiring that the representation be "material" and that the recipient be "misled" by it. This argument boils down to the idea that attaching the clerk's name to the subpoena is a clerical formality; that no consumer would know whether Mr. Lee's or someone else's name should be on it; that the delinquent debtor would have to respond no matter what under pain of incarceration; and that Paula Jensen, who by serendipity caught on to the ruse, had no standing to sue anyway, because she knew Mr. Lee and that he had retired, but responded anyway. This Court should decline the invitation to adopt this newfangled standard and reasoning, reverse the District Court's decision and judgment, direct that judgment be entered on liability for Jensen, and remand the case for class certification and damages proceedings.

### B. Midland and Pressler Fail to Justify the Insertion of Materiality into the FDCPA

Appellees argue that this Court should adopt the materiality standard because other circuit courts have adopted it and many district courts have as well. [Pressler at 13–14; Midland at 9–10, 12–13]. Repetition, however, does not establish validity. As shown in the moving brief, cases adopting the materiality standard hail from *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). As argued in the moving brief, the *Hahn* decision erroneously read materiality into the FDCPA, relying on Supreme Court cases that do not support – and in fact prohibit – adding elements to

2

statutes except in narrow circumstances. *Hanh* is wrong and so too are the decisions relying on it.

Appellees avoid attempting to justify the insertion of materiality into the FDCPA statute on any basis the Supreme Court has recognized. The Supreme Court decisions teach a three-step approach to deciding whether an element is part of a false statement statute. In *United States v. Wells*, 519 U.S. 482, 490, 117 S. Ct. 921 (1997), the Court first looked for references to materiality in the language of the statute itself. Under the facts of *Wells*, the Court found that materiality did not appear in the text. *Id.* The Court then looked to see whether the statutory terms had common-law meanings that imputed materiality. *Id.* at 491. The facts in *Wells* showed that the statute at issue had no common law roots, but arose from an amalgamation of 13 previous statutes, each penalizing a different type of false statement to a bank. *Id.* at 492. The Court then moved to a third level of analysis – statutory history. This review showed that materiality had been an element of some of the 13 source statutes but that this element had been removed during consolidation. *Id.* at 496–97. The Court concluded that no common law meanings applied and that Congress deliberately intended to remove the materiality element for this statute. Thus, the Court concluded that materiality was not an element of 18 U.S.C. § 1014. *Id.* at 497.

In *Neder v. United States*, 527 U.S. 1, 20, 119 S. Ct. 1827 (1999), the Supreme Court analyzed whether the federal mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and bank fraud (18 U.S.C. § 1344) statutes included a materiality

3

element.  The Supreme Court applied the same framework as in *Wells*.  It first considered whether materiality was in the language of the statutes, and found it was not. 527 U.S. at 20–21.  Like in *Wells*, the Court next turned to the common-law meanings of the terms of the statute. Because "fraud" in common law included an element of materiality, the Court held that Congress presumed to include it. *Id.* at 21–23.  Based on this, the Court did not reach the third level of analysis.  In *Carter v. United States*, the Court confirmed that the doctrine on imputing common-law meaning to statutory terms applies *only* when "Congress makes use of a statutory term with established meaning at common law." 530 U.S. 255, 264, 120 S. Ct. 2159 (2000) (emphasis omitted).  The Supreme Court emphasized that it has "long been understood" that "the canon on imputing common-law meaning" is of "limited scope." *Id.*

Appellees fail to point this Court to the materiality element in the language of the FDCPA, for there is none.  Appellees fail to establish that the FDCPA's strict liability prohibitions against "false representations" carry with them common law meanings.  And they also fail to find any reference to "materiality" in the statute's history.  They strike out, in sum, in justifying the materiality standard under the controlling Supreme Court precedent.

Unable to find justification for insertion of materiality into the statute based on controlling Supreme Court cases, Midland suggests that the *Hahn* Court did not rely on *Carter* and *Neder* but instead made a "passing reference" to those cases. [Midland at

4

17].  Not so – the *Hahn* court found "[m]ateriality is an ordinary element of any

federal claim based on a false or misleading statement," citing both *Neder* and *Carter*

for that proposition. 557 F.3d at 757–58.  This was the *Hahn* court's holding, not *dicta*

or a "passing reference."

Even uncoupled from the cases on which it relies, the *Hahn* court's reasoning

that "materiality is an ordinary element of any federal claim based on a false or

misleading statement" simply has no basis.  In addition to the Supreme Court cases

already cited that come out differently on similar language, some federal statutes

require materiality while others do not. *Compare United States v. Abuagla*, 336 F.3d 277,

278–79 (4th Cir. 2003) ("Nowhere does [§ 1015(a)] further say that a material fact

must be the subject of the false statement or so much as mention materiality.")

(internal quotation marks omitted), *with United States v. Avelino*, 967 F.2d 815, 817 (2d

Cir. 1992) ("[F]alse statements under Section 542 are necessarily material because the

importation must be 'by means of [the] false statement' . . . .") *and United States v.

Alferahin*, 433 F.3d 1148, 1155–56 (9th Cir. 2006) (18 U.S.C. § 1425(a) provides

criminal penalties for "knowingly procur[ing] or attempt[ing] to procure, contrary to

law, the naturalization of any person" and requires materiality).  Thus, it is simply not

correct to suggest that materiality is an "ordinary element" of federal statutes.

Appellees then contend that the *Wells-Neder-Carter* doctrine does not apply

because those cases are criminal, not civil. No luck here either.  To begin with, the

*Hahn* court did not hesitate to rely on those cases for the incorrect proposition it

5

advanced.  Further, none of the Supreme Court cases themselves make the distinction Appellees advocate.  Finally, courts use the analytical framework established in these cases in civil cases. *See, e.g.*, *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 455–56 (6th Cir. 2008) (patent infringement case).  Thus, the distinction holds no persuasive power, because rules of statutory construction do not change depending on context.

Relying on *United States ex. rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. 2003), Midland argues at that this Court should hesitate to apply criminal law jurisprudence in the civil context. [Midland at 18].  In *Harrison*, the court held that the civil provisions of the False Claims Act ("FCA") require materiality, despite the Supreme Court's prior decision that the criminal FCA liability did not. *Id.* at 916.

Comparing *Harrison* to the case at bar has all the persuasive power of comparing apples to oranges because the civil and criminal provisions of the FCA differ from one another. *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 444 n.12 (6th Cir. 2005).  Though they were both part of the original FCA passed in 1863, the civil and criminal provisions were severed in 1874 and codified in different portions of the United States Code. *Id.* (citing *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 674 (5th Cir.), *reh'g en banc granted*, 307 F.3d 352 (5th Cir. 2002)).  With regard to materiality, the language of the civil provision is substantially different than its criminal counterpart. *Compare* 31 U.S.C. § 3729

(imposing civil liability on any person who "knowingly presents . . . a false or fraudulent claim for payment or approval" or who uses a false statement "to get a false or fraudulent claim paid"), *with* 18 U.S.C. § 287 (imposing criminal liability on any person who presents a claim "knowing such claim to be false, fictitious, or fraudulent"). *U.S. ex rel. A+ Homecare, Inc.*, 400 F.3d at 444 n.12; *accord United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008) ("The text of the FCA does not include a materiality requirement, but legislative history indicates that § 3729(a)(7) was enacted to provide that 'an individual who makes a material misrepresentation to avoid paying money owed the Government should be equally liable under the Act as if he had submitted a false claim.'") (emphasis omitted).  In sum, the *Harrison* court "expressed reluctance to apply rulings in a criminal context to civil cases" [Midland at 18–19] because the criminal and civil FCA statutes differed, not because any doctrine failed to apply across criminal and civil law generally.  Accordingly, Midland's citation to *Harrison* misses the mark.

Finally, Appellees' attempt to marry the FDCPA to fraud-like statutes should be rejected because the FDCPA is unmistakably broader than fraud.  "[T]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Interpreting this statute narrowly and adding elements to it that neither its language nor its history nor its generation-long application justify, would gut its purpose.

7

### C. Public Policy Militates Toward Expanding Consumer Protections

Seeking to declaw the FDCPA and shift focus, Midland makes a policy argument worth debunking – that the broad interpretation of FDCPA's provisions has spawned "a cottage industry of attorneys who take advantage of the FDCPA's fee-shifting structure" and manufacture FDCPA claims atop typos. [Midland at 19].

This is a baseless argument legally. The FDCPA was in fact enacted to "permit, even encourage, attorneys . . . to act as private attorney generals to pursue FDCPA claims." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).  Thus, there is nothing untoward in lawyers doing exactly what the statute contemplated.

The argument misses the boat factually, too, because, according to the debt



collection industry's own website, FDCPA lawsuits are in the third straight year of **decline**.  Moreover, 2014 could see the largest decline yet in total FDCPA lawsuit filings. The chart is reproduced here for the Court's convenience.[1]

Finally, while lawsuit filings decline, in 2013, the total number of debt collection complaints the Federal Trade Commission ("FTC") received from all

---

[1] Patrick Lunsford, *After Slight Rise in July, FDCPA Lawsuits Still Down Overall for 2014; TCPA Claims Increase*, insideARM.com (Aug. 22, 2014), http://www.insidearm.com/daily/debt-buying-topics/debt-buying/after-slight-rise-in-july-fdcpa-lawsuits-still-down-overall-for-2014-tcpa-claims-increase/.

sources rose to 204,464, up from 202,616 in 2012.[2]  In the meantime, in an annual

report issued by the Consumer Financial Protection Bureau ("CFPB") on Monday,

March 31, 2014, the Bureau announced that it had received nearly **double** the number

of consumer complaints in 2013 as compared to 2012.  The report noted that 163,700

total complaints were brought to the Bureau's attention in 2013, a jump from

approximately 91,000 in 2012.[3]  The three most common complaints received by the

Bureau concerned credit reporting, mortgage, and debt collection – with mortgages,

including issues related to loan modifications, collections, or foreclosures, accounting

for over 37 percent of the overall complaints.[4]  Debt collection complaints made up

19 percent of the total, whereas credit reporting accounted for approximately 15

percent of the complaints in 2013.  When fewer and fewer suits are filed, and more

and more people complaint about debt collection abuse, it is not time to tighten the

law to constrict consumer remedies.

Finally, Midland's argument misses the boat in the case of Appellees, serial

offenders of the FDCPA.  *See, e.g., Oberther v. Midland Credit Management, Inc,* --- F.

---

[2] *See* FTC, Consumer Sentinel Network Data Book for January-December 2013 at
App. B2 (Feb. 2014), *available at* http://www.ftc.gov/reports/consumer-sentinel-
network-data-book-january-december-2013.

[3] Consumer Financial Protection Bureau, *Consumer Response Annual Report: January 1 –
December 31, 2013* at p. 6 (2014),
http://files.consumerfinance.gov/f/201403_cfpb_consumer-response-annual-report-
complaints.pdf.

[4] *Id.* at p. 12.

Supp. 3d ----, 2014 WL 4548871, *6 (D. Mass. Sept. 15, 2014) (finding in class action that Midland collection letter violated 15 U.S.C. § 1692g(b)); *Bock v. Pressler and Pressler, LLP*, --- F. Supp. 2d ----, 2014 WL 2937929, *17–18 (D.N.J. June 30, 2014) ("Pressler violated the general prohibitions of 15 U.S.C. § 1692e, as well as subsections (3) and (9) in particular); *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 970 (N.D. Ill. 2009) (holding in class action that "the affidavit was false, deceptive, and misleading in its use in conjunction with an attempt to collect a debt, and Midland and MCM have violated FDCPA § 1692e").

In sum, public policy militates toward expanding consumer protections contemplated by the FDCPA, not shrinking them.

### D. Jensen's Answer to the Subpoena Has No Bearing on Liability

The District Court held, and Appellees argue now, that the counterfeit electronic signature of Mr. Lee was not material because Jensen responded to it anyway and knew Mr. Lee. [AVI-12 ("[T]his Court notes the rationale that if a consumer is aware of the false statement, then such a person cannot be misled by that statement . . . ."); Midland at 15, 24–25; Pressler at 16]. There are four reasons this is wrong.

First, cases Jensen cited in the moving brief all hold that whether Jensen was misled, or not, is irrelevant. [Jensen at 18–19]. *Pollard v. Law Office of Mandy L. Spaulding*, 2014 WL 4402213, at *3–4 (1st Cir. Sept. 8, 2014); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 n.11 (11th Cir. 1985) ("First, we reiterate that the question is not

whether Jeter was deceived, but whether the 'least sophisticated consumer' would have been deceived."); *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007), *aff'd*, 556 F.3d 643 (7th Cir. 2009) ("The test, however, is not whether the individual who received the letter was misled, but whether an unsophisticated consumer would be misled by the representations made by the debt collector."). To the extent the District Court considered Jensen's acquaintance with Mr. Lee as a factor in the Court's decision-making, that was error.

Second, as a matter of fact, neither Pressler nor Midland proved that Jensen "was not misled." True, Jensen knew Terrence Lee. True, she knew he had retired. True, she thought that he did not authorize the subpoena. [Midland at 4]. However, it is also true that she provided the responses demanded by the subpoena even while protesting that the subpoena was fraudulent. [Pressler at 16; AVII-24]. Therefore, to say that she "was not misled" is to ignore that, weary of the penalties for failing to respond, she in fact *answered* the subpoena even while knowing that it was not properly issued in the name of the Clerk of Court.

Three, the argument also fails as a matter of logic. The hypothetical "least sophisticated consumer" standard presupposes that the plaintiff, on her own or with her lawyer, identifies a particular statement as false and brings suit. That consumer, by definition, avoids the trap and is not fooled. A fooled consumer would not identify a statement as false, letting the offender get off scot-free. If an un-fooled

consumer cannot sue, then FDCPA litigation based on false and deceptive statements would be eliminated altogether.

Four, whether Jensen was misled, or not, has no relevance by Appellees' own admission. Midland argues that materiality standard is a wholly objective one. [Midland at 23]. Under this objective standard advocated by Midland, it should make not one wit of difference what Jensen thought, or didn't.

Accordingly, the District Court erred in finding that Jensen's 1692e claims failed due to her personal knowledge.

### E. Materiality Is for the Jury

Appellees both contend that materiality is for the judge to decide, not the jury. [Midland at 22; Pressler at 22]. But that is not the law in most contexts. *U.S. ex rel. Harrison*, 352 F.3d at 914. In the securities context, this Court has ruled that "materiality is ordinarily an issue left to the factfinder" unless "misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274–75 (3d Cir. 2004) (quoting *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 281 n.11 (3d Cir. 1992) and citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S. Ct. 2126 (1976)) (emphasis omitted). The same is true in the insurance context. *Jung v. Nationwide Mut. Fire Inc. Co.*, 949 F.Supp. 353, 357 (E.D. Pa. 1997).

In her moving brief, Jensen showed that the New Jersey judiciary takes great care to inform the bar of the correct clerk's name, and that it views such

12

announcements as being of utmost importance. [Jensen at 4–7]. Therefore, under the standards this Court employs, the misrepresentation concerning the clerk's name is not "obviously unimportant." Therefore, it should have been decided by the jury, not the District Judge.

## II.    IN ANY EVENT, THE SUBPOENA WAS MATERIALLY MISLEADING BECAUSE IT WAS IMPROPERLY ISSUED

Midland and Pressler forego analyzing the materiality of an improperly-issued subpoena and instead spend time arguing issues that are not in dispute. For the record, Jensen agrees that an attorney in New Jersey may issue a subpoena in the name of the clerk under Rule 1:9-1. [Pressler at 25; Midland at 26]. Jensen agrees that the form itself is right or approved by the New Jersey courts. [Midland at 27]. Jensen agrees that such a subpoena may only be issued in the "name of the clerk" of the court under Rule 1:9-1. [Pressler at 25; Midland at 28]. But Jensen argued below and now on appeal that the subpoena sent to Jensen was not signed in the name of the clerk, and hence was not a properly issued subpoena at all.

Notwithstanding Appellees' argument, the New Jersey Supreme Court would likely hold that the subpoena void. This Court must predict how the highest New Jersey court would decide the issue were it confronted with it. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). In arriving at that prediction, this Court may look to intermediate appellate court opinions as "indicia" of the highest court's likely decision. *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 281 (3d Cir.

1989).  This Court may also look to "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Packard*, 994 F.2d at 1046; *see also McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661–663 (3d Cir. 1980).

Applying these principles, this Court should hold that the New Jersey Supreme Court is likely to hold Pressler's subpoena to Jensen void.  Not one, but two New Jersey appellate courts have held that "the subpoena power is a significant one which must be exercised in good faith and in <u>strict adherence</u> to the rules to eliminate potential abuses." *Cavallaro v. Jamco Prop. Mgmt.*, 760 A.2d 353, 359 (N.J. Super. Ct. App. Div. 2000) (emphasis added); *see Crescenzo v. Crane*, 796 A.2d 283, 284 (N.J. Super. Ct. App. Div. 2002), *cert. denied*, 174 N.J. 364 (2002).  Because the subpoena in this case plainly broke the rules governing the issuance of such documents, the New Jersey Supreme Court would likely hold that it was not issued in "strict adherence" to the rules and deem it void.

Attempting to avoid the application of the strict adherence requirement, Pressler argues that the strict adherence requirement applies only to "guard against unlawfully obtaining information you otherwise are not entitled to receive." [Pressler at 31].  However, the reach of the requirement is far broader and applies to all against whom discovery is sought, as explained by the *Crescenso* Court:

The authority of an attorney to issue a discovery subpoena

14

> *duces tecum* under the seal of the Superior Court pursuant to
> R. *534 4:14–7(c) (the Rule) "is a significant one which
> must be exercised in good faith and in strict adherence to
> the rules to eliminate potential abuses." *Cavallaro v. Jamco
> Prop. Mgmt.*, 334 N.J.Super. 557, 569, 760 A.2d 353
> (App.Div.2000). Unfortunately, violations of the Rule are
> both "recurring and vexing." *Id.* at 560, 760 A.2d 353.
> Failure to adhere to the Rule's provisions may result in the
> improper and unauthorized acquisition of records and
> documents that, although ultimately discoverable, may
> expose third parties to potential liability *as well as infringe on
> the lawful rights and privileges of those against whom discovery is
> sought.*

796 A.2d at 284 (emphasis added). Thus, the subpoena rules must be strictly followed

as to all discovery sought.

Pressler incorrectly maintains that New Jersey courts are likely to treat the

subpoena to Jensen differently from a subpoena *duces tecum* directed to a third party.

[Pressler at 30-31]. That is a distinction without a difference in this case. *Duces tecum*

subpoenas seek documents. Pressler's subpoena did not seek documents, but it

instead sought to compel disclosure of the most private and personal financial

information to be derived from documents: social security number (#4), driver's

license number (#5), employer name, names and addresses of all bank accounts (#8),

all sources of income with name and address of source (#10), all property owned and

mortgage amounts (#12 & 13). [AVII-12]. Whatever difference there is between *duces

tecum* and information subpoenas conceptually, there is no difference between the two

types of disclosure in this case.

Accordingly, the strict adherence standard applies and renders the subpoena

void and its falsity material. [*See* Jensen at 26–28].

## A. Defective Summons Cases Have No Bearing on This Case

Midland and Pressler both contend that New Jersey courts are likely to follow the *Hirsch v. DePuy,* 11 N.J. Misc. 500 (1933) and *Wood v. Fithian*, 24 N.J.L. 838 (E&A 1855) line of cases that hold that technical errors in the summons do not invalidate service of process, at least where the errors are technical and the recipient knows of the suit but elects to ignore it. [Pressler at 27; Midland at 29–30]. These cases are distinguishable on a number of grounds.

First, the obvious – relevance. Given the recent Appellate-level cases requiring strict adherence to rules governing subpoenas, it is unlikely that the New Jersey Supreme Court would turn to century-old precedent on a different subject for guidance. Appellees fail to explain *why* the summons defect cases are relevant and why this Court should look to these cases rather than recent cases directly on point.

Moreover, in the cases Pressler cites, the summons recipients got the notice, were apprised that suits were filed, ignored the suits, then fought the judgments on the ground that the original notice was deficient. The subpoena sent by Pressler is much more than a mere notice that the recipient could ignore. Compliance with Pressler's subpoena was mandatory – it invoked the power of the Court to arrest, incarcerate and thus compel the provision of answers sought by the creditor. It is, in short, a vastly more significant document than a mere summons, ignoring which costs freedom, not merely money.

Moreover, Appellees also misapply *Hirsch* in arguing that the subpoena it served on Ms. Jensen was not void. [Pressler at 27; Midland at 29–30]. In *Hirsch*, the subject summons contained the typed name of the clerk instead of a signature. 11 N.J. Misc. at 500–01. While the court found this to be an "irregularity," along with the absence of a seal and date, the court did not find the summons void because "the defendant was at no time in doubt as to the significance or authority of the summons or of the complaint, both of which were lawfully served upon him." *Id.* at 501. Here, in contrast, Jensen questioned the authority of the subpoena in her January 15, 2012 letter to Pressler. [AVII-24]. Under the guidance provided by *Hirsch*, the wrong name of the clerk in the subpoena thus precluded its recipient from "know[ing] with certainty that it [wa]s a court process." *Id.* As such, the magnitude of the irregularity at issue "deprives that instrument of authenticity." *Id.*

Pressler also cites *Wood v. Fithian*, 24 N.J.L. 838 (E&A 1855), to argue that technical errors will not necessarily render a court document void. [Pressler at 27–28]. That case is also inapposite. First, there the proper justice signed the summons. He used his full last name, but only the first initial of his given name. The court found no authority for a requirement imposing "that every writ must be signed by the proper officer, with his name in full." *Id.* at 841-42. Here, in contrast, the name of the clerk appearing on the subpoena was completely wrong and in clear violation of Rule 1:9-1. Further, the court in *Wood* found that the defendant "was not misled or surprised" by

the way the summons was signed. *Id.* at 842. That was not the case here, as evidenced by Jensen's January 15, 2012 letter to Pressler. [AVII-24].

### B. The Subpoena Is Capable of Two Interpretations, One of Which Is False

Alternatively, the Information Subpoena violates Sections 1692e and e(10) because "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Rosenau v Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008). Here, the least sophisticated consumer cannot discern whether the subpoena is valid and must be answered or, in all likelihood, void and ignoring it and bears no consequence. Indeed, even though Jensen knew that Terrence Lee did not see or sign the subpoena, she still answered it, fearing the "ARREST AND INCARCERATION" threat featured in the heading. [AVII-27]. Since the Subpoena is capable of two interpretations, one of which is false, it violates the law. The District Judge erred in failing to analyze the facts alleged under the plain language of the statute using the least sophisticated consumer standard.

In her moving brief, Jensen likened the facts here to a long line of circuit court decisions holding that letters bearing attorneys' signatures that are not in fact reviewed by attorneys are deceptive and violate the FDCPA. [Jensen at 30]. Midland first counters that Jensen waived the argument by failing to raise it below. But no waiver took place. Jensen raised the same argument in the District Court, relying on this Court's decisions in *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d

18

Cir. 2011) and the Seventh Circuit's in *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). [AVII-92–93].

On the point of the relevance of these cases, both Pressler and Midland confuse the point of the argument. Jensen did not plead a meaningful review argument below, and the summary judgment proceedings did not deal with it directly. But it applies because the District Court held that the error was "clerical." [AVI – 12].

This Court and its sister courts have held lawyers to task for disseminating letters with their names without so much as reviewing the letters. Lawyers, courts have reasoned, hold privileges that lay people do not possess, *Avila*, 84 F.3d at 229, and debtors react more quickly to lawyers' letters, because they believe "that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which [such a] letter was sent." *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 301 (3d Cir. 2008). And when a lawyer's name appears on a letter, courts require that the lawyer meaningfully review the letter and the account.

The analogy has strong persuasive force here. The subpoena bears the electronic signature of Attorney Joanne L. D'Aurizio, but there was no evidence before the District Court to show that Ms. D'Aurizio, acting like a lawyer usually does, reviewed the subpoena. Pressler asks this Court to disregard this absence of evidence [Pressler at 5], but its request simply highlights the evidence of absence of Ms. D'Aurizio's involvement in the subpoena-generating process. Warren County is

19

19th of 21 New Jersey counties by population.[5]   Is it really believable that a lawyer regularly practicing in Warren County Court would not know the name of the clerk? Or that she would not have heard of Terrence Lee's retirement as County Clerk and not be familiar with his replacement? The answer to these questions is clearly 'no.' The only plausible inference here is that subpoenas Pressler generates, like the mass-produced complaints it stamps, are produced with no attorney involvement whatsoever. *See Bock*, 2014 WL 2937929 at *18 (Pressler attorneys reviewed complaints on two computer monitors, for a total of 673 complaints per day, 4 seconds each).   And if no attorney involvement existed in the subpoena-generating process, then the attachment of Terrence Lee's name to the subpoena is not an inadvertent error, but an error born of carelessness and disregard for proper practice.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the District Court decision granting summary judgment in favor of Pressler and Midland must be reversed and this Court should direct the District Court to enter summary judgment in favor of Jensen on the issue of liability under § 1692e(9), § 1692e and § 1692e(10) of the FDCPA.  The case should be remanded for class discovery, damages and class certification proceedings.

---

[5] http://www.co.warren.nj.us/StatisticalItems/Statistical_items.html.

Dated: December 22, 2014

RESPECTFULLY SUBMITTED,

_____

Sergei Lemberg, Esq.
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250 x5500
Facsimile:   (203) 653-3424
slemberg@lemberglaw.com
*Attorneys for Appellant*
*Paula Jensen*

## **COMBINED CERTIFICATIONS**

### **Bar Membership**

*I hereby certify that I, Sergei Lemberg, am a member in good standing of the United States*

*Court of Appeals for the Third Circuit.*

PAULA JENSEN,

Sergei Lemberg, Esq.
LEMBERG LAW, LLC

## **Word Count**

*I hereby certify that this Brief complies with the applicable page and word count limitations of Fed. R. App. P. 32(a)(7)(B) & (C) as it consists of 5241 words, as counted by Microsoft Word, 2007, exclusive of all tables, disclosure statements and certifications of counsel.*

PAULA JENSEN,

_____

Sergei Lemberg, Esq.
LEMBERG LAW, LLC

## Service Upon Counsel or Litigants

*I hereby certify that a true and correct copy of Appellant Paula Jensen's Reply Brief was*

*served upon counsel for the Appellees via e-mail and regular mail on this the* 22nd day of

December, 2014.

*Michael J. Peters*
*Mitchell L. Williamson*
*Pressler & Pressler*
*7 Entin Road*
*Parsippany, NJ 07054*
*mpeters@pressler-pressler.com*
*mwilliamson@pressler-pressler.com*

*Lauren M. Burnette*
*Marshall, Dennehey, Warner, Coleman & Goggin*
*100 Corporate Center Drive*
*Suite 201*
*Camp Hill, PA 17011*
*lmburnette@mdwcg.com*

*Ronald M. Metcho, II*
*Andrew M. Schwartz*
*Marshall, Dennehey, Warner, Coleman & Goggin*
*2000 Market Street*
*Suite 2300*
*Philadelphia, PA 19103*
*rmmetcho@mdwcg.com*
*AMschwartz@mdwcg.com*

PAULA JENSEN,

Sergei Lemberg, Esq.
LEMBERG LAW, LLC

## <u>Identical Compliance of Briefs</u>

*I hereby certify that the PDF version of this Brief filed with the Court electronically is*

*identical to the paper "hard copy" version of the Brief being filed with the Court and served on counsel*

*and litigants.*

PAULA JENSEN,

_____
Sergei Lemberg, Esq.
LEMBERG LAW, LLC

**<u>Virus Check</u>**

*I hereby certify that a virus scan was performed using Avast! antivirus on the PDF file*

*containing this Brief filed with the Court electronically, and no viruses were detected in the files.*

PAULA JENSEN,

Sergei Lemberg, Esq.
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (877) 795-3666
Slemberg@lemberglaw.com
Attorneys for Appellant
Paula Jensen